## SMITH vs. SCHULENBERG and others.

EVIDENCE. (1) "*Scale bill,*" *when admissible in action for price of logs.* (2) *Receipt* "*in full for logs to date*" *not conclusive.*

TORT. (3) *When tort may be waived and suit brought on contract.* (5) *What is sufficient proof of conversion.* (6) *When demand unnecessary.*

PLEADING. PRACTICE. (4) *When amendment allowed on trial.*

DAMAGES. (7) *Judgment allowed to stand on excessive damages being remitted.*

1. In an action for the price of logs alleged to have been sold and delivered to defendants (who were partners), where there was a question as to the amount of logs delivered, a witness having testified for plaintiff that a certain "scale bill," had been submitted by him to one of the defendants, who had admitted the receipt of the amount of logs therein mentioned: *Held,* that such "scale bill" was *admissible in evidence* for plaintiff.

2. A *receipt* from plaintiffs to defendants " *in full* for logs to date," is *not conclusive evidence* that plaintiff had received payment for all logs by him delivered to defendant prior to its date, but was open to explanation or contradiction by oral evidence; as by plaintiff's testimony that when he signed it, he did not know it was anything more than a receipt for the sum of money therein named.

3. Where logs of A. are sold and delivered to B. by C. as his own, and by B. converted to his own use, A. may waive the tort, affirm the sale, and sue B. on contract.

4. Where only a part of the logs alleged by plaintiff to have been sold and delivered by him to defendants were in fact so sold and delivered, and a part thereof were sold and delivered by C. as his own, and proof was made at the trial, *without objection*, that such last mentioned logs were delivered by C., and were plaintiff's property: *Held*, that the court should have permitted an *amendment of the complaint on trial* (if necessary) to obviate any technical objection to plaintiff's recovering the value of such logs in this action.

5. Proof that defendants claimed to have purchased such logs from C., and to have paid him for them, and denied plaintiff's interest in them, was sufficient proof of a *conversion*.

6. Even an action for a *conversion* may be maintained *without demand of the specific* property, where such demand would be of no avail and *payment* for the property has been demanded. And where plaintiff waives the tort and sues on contract, *no demand* of the property need be shown.

7. The *damages* awarded plaintiff by the judgment being *eleven dollars in excess* of what he would be entitled to upon the most favorable construction of the evidence for him, the judgment is permitted to stand upon his *remitting* that amount, and paying the *costs of the appeal*.

APPEAL from the Circuit Court for *Polk* County.

*Smith* brought suit against *Schulenberg, Bœckler* and *Hospes*, partners under the firm name of Schulenberg, Bœckler & Co., to recover a balance due on account of said logs sold to defendants by Gilmore & Smith, partners, the claim being now owned by *Smith*, individually. The answer admitted the purchase of logs, and alleged payments on account thereof, and that the parties afterwards accounted together for all logs sold, when there was found to be due plaintiff the sum of $102.76, which sum defendants then paid, and plaintiff accepted in full payment for the logs.

Upon the trial the plaintiff testified, in substance, that the agreement made with *Schulenberg* was, that defendants were to gather the logs then loose in the lake, and to take the balance that came through the boom from the stringers at their own expense, and to abide by the scale of the surveyor general at Stillwater in Minnesota. Plaintiff procured the scale bill from the surveyor general, and presented it to *Hospes* for settlement, which the latter refused, on the ground that one Cover had told him not to pay for a certain amount of logs, sixteen or seventeen thousand, and defendants would not pay until they had seen Cover.

H. C. Baker testified to a conversation with *Schulenberg*, in which he presented the scale bill, and *Schulenberg* said that the footing was correct, or substantially so, or that it agreed with their scale bill. Plaintiff then offered the scale bill in evidence, which was objected to by defendants, on the ground that it was not evidence of the delivery of the logs mentioned in the complaint, that there was no sufficient evidence of the delivery of such logs, and that the bill was irrelevant. The court overruled such objection, and admitted the scale bill in evidence, which was admitted to be a correct copy of the scale bill of the surveyor general.

A motion by defendants that plaintiff be nonsuited, because no delivery of the logs had been proven, was denied.

*Louis Hospes*, one of the defendants, testified that they had received between sixteen and seventeen thousand feet of the logs in controversy from Mr. Cover, and had paid him for them. Defendants had an accounting and settlement with *Smith*, in which it was found that there was due him $102.76, for which sum *Smith* gave the following receipt, dated at Stillwater, February 26, 1868, and signed by the plaintiff: "Received from Schulenberg, Bœckler & Co., one hundred and two and 76-100 dollars, in full for logs up to date, of the following marks, to wit," etc. (describing the marks). *Hospes* further testified that at the time of this settlement he notified *Smith* that he had paid Cover for

the logs claimed by him.  *Smith* said he did not like it, but as the matter was settled, it was all right.  "Mr. Cover was picking up logs for us in the lake.  He brought these logs up with others, and put them in the boom with ours, and the surveyor general scaled them to us."  Question: "What evidence had you that these logs belonged to Cover?"  Answer: "Cover told me so."

David Cover testified that defendants settled with him for 16,927 feet of logs mentioned in the scale bills.  These logs had been rafted, and had been purchased by Mr. Nelson, of the firm of Gilmore & Smith, and part of them had got broken up in the lake.  Witness picked them up, and turned out to Nelson lake logs in place of them.

Plaintiff, in rebuttal, testified that he had never recognized the claim for Cover's logs, but had always insisted that he, Cover, had no claim, and that defendants should pay for the logs. With reference to the receipt above set forth, he was asked the following question: "State whether, in signing that receipt, it was your understanding and intention that it should be a final settlement of all this log transaction between you and Schulenberg, Bœckler & Co., including the disputed 16,927 feet claimed by Cover."  The court admitted the question, subject to defendant's objection.  Witness answered that it was not his intention to sign a receipt that would cut him off as to the Cover logs; he did not notice that it was anything more than a receipt for so much money; he only intended to give a receipt for the amount of money, which amount was obtained from defendants' books; he understood the figures were the balance on the books, not including the logs claimed by Cover.

Defendants requested the court to instruct the jury: 1. That if plaintiff and defendant *Hospes* looked over their accounts, and plaintiff then knew of the logs delivered by Cover to defendants, and that Cover had been paid for them, and defendants afterwards paid the $102.76, and plaintiff gave them the receipt offered in evidence, for the balance of account for the

Smith vs. Schulenberg and others.

logs, plaintiff could not recover. 2. That if plaintiff and *Hospes* had a settlement, and the balance found due was paid by defendants, and plaintiff gave the receipt, they must find for defendants. 3. That defendants were not liable to pay for the Cover logs, if Cover made the arrangement he testified to with Nelson, and, in pursuance thereof, picked up the logs in the lake and delivered them to defendants, whether they came from Nelson's raft or not. 4. That, as the action is upon express contract for goods sold and delivered to the plaintiff, if the defendants purchased the logs in question of Cover, plaintiff cannot recover therefor. All which instructions were refused.

The court instructed the jury that the receipt given in evidence was not conclusive against the plaintiff, but that it was open to explanation, and plaintiff might prove that it was not given in final settlement. The jury found for the plaintiff, and assessed his damages at $276, with interest from February 26, 1868, $85.65. Defendants moved for a new trial, but before the decision of the motion, plaintiff offered to remit from the damages, as found by the jury, $54.60, and from the interest $14.90, which was allowed by the court, and the motion for a new trial overruled. Judgment accordingly; from which defendants appealed.

*Glover & Clinton* and *Wm. M. McCluer*, for appellants. [No brief on file.]

*Baker & Spooner*, with *P. L. Spooner*, of counsel, *contra*, argued that the scale bill was competent evidence, its effect, however, being for the jury to determine. The receipt in question was *prima facie* evidence of payment for all logs delivered prior to that date, and nothing more. *Smith's* evidence in explanation of it was clearly admissible. *Woodman v. Clapp*, 21 Wis., 350. The jury being satisfied that the receipt was not given in discharge of the claims for the Cover logs, the liability of defendants was to be determined from the other evidence in the cause. The evidence upon that subject was conflicting, and the court properly told the jury that they must determine to

which of the witnesses credence should be given. This court will not undertake to review the determination of the jury upon that subject.

The following opinion was filed at the June term, 1873.

COLE, J.    The first exceptions taken by the counsel for the defendants relate to the rulings of the court on admitting in evidence the scale-bill made by the surveyor general of the first lumber district of Minnesota, and upon the motion for a nonsuit. These exceptions can be conveniently considered together.

The parties differed in regard to the quantity of logs which had been delivered by the plaintiff. And the scale-bill was introduced in evidence to prove the delivery of the logs mentioned in it. It appeared from the testimony of Mr. Baker, that this scale-bill had been submitted by him to the defendant *Schulenberg*, who had in substance admitted that the defendants had received the amount of logs mentioned in that scale-bill, and that it was substantially correct. Now it is said that this admission was, under the circumstances, the weakest kind of evidence upon the question as to the quantity of logs delivered by the plaintiff; and yet undeniably it was competent testimony to go to the jury upon that point. Whether much or little weight was to be given this admission with reference to the fact to be proved, was obviously a matter for the jury alone to determine. But it is impossible to say that, in connection with the other testimony, it did not tend to prove the delivery of the amount of logs mentioned in it, by the plaintiff. And this being so, it is further very manifest that there was no error in the refusal of the court to grant the motion for a nonsuit on the ground that there was no evidence of the delivery of the amount of logs as claimed in the complaint. There was certainly testimony to go to the jury upon that question, and consequently the motion for a nonsuit was properly denied.

The other exceptions resolve themselves into the question as

Smith vs. Schulenberg and others.

to what effect should be given to the receipt offered in evidence, dated February 26, 1868. The defendants insisted that this receipt was satisfactory and conclusive evidence of a final settlement between the parties of all matters relating to the amount of logs delivered, and showed a payment of the balance found due at that time. The court, however, held that no such conclusive force or effect should be given to the receipt, but that it was open to explanation, and permitted the plaintiff to testify, under objection, that when he signed the receipt it was not his understanding and intention that it should be a final settlement of all the log transactions between him and the defendants, including the logs claimed by Cover, which was the principal matter in controversy in this action.

It seems to us the court was clearly right in the view it took of the receipt, and the effect which should be given to it in evidence. The receipt was for $102.76, "in full for logs up to date," and it was undoubtedly strong evidence that the plaintiff had received payment for all the logs he had delivered prior to its date. But it was not conclusive evidence of that fact, and might be explained. It was competent for the plaintiff to show, notwithstanding the receipt purported to be "in full for logs up to date," that the logs in controversy were not included in that settlement. The fact which it recited was open to explanation, and even contradiction, by oral testimony. The plaintiff testified that when he signed the receipt, "he did not notice that it was anything more than a receipt for so much money." He did not intend that it should cut him off from insisting upon being paid for the Cover logs; and we do not know of any principle of law or morals which precludes him from showing that the receipt did not in fact and was not intended to cover that claim. These remarks are all we deem it necessary to make in respect to the refusal of the court to give the first two instructions asked on the part of the defendants, as to the effect of the receipt in evidence, as well as in respect

to the exception taken to the charge of the court upon that subject.

The other two instructions asked on the part of the defendants were objectionable for ignoring the question whether the plaintiff was the owner of the logs delivered to them by Cover. It was of no consequence whether or not Cover made the arrangement he testified to with Nelson, and in pursuance thereof picked up the logs in the lake and delivered them to the defendants, if the logs were the property of the plaintiff. How could such a transaction affect the plaintiff's rights, or relieve the defendants from liability to pay him for his logs?

If the plaintiff was entitled, under the circumstances, to recover for these logs, then we do not understand that the amount of damages in the judgment is excessive. The plaintiff remitted a portion of the damages, pending a motion for a new trial, as he had a right to do.

This disposes of all the material questions in the case.

*By the Court.* — The judgment of the court below is affirmed.

On a motion for a rehearing, counsel for the appellants argued that the action, being brought for goods sold and delivered by plaintiff to defendants, could not be maintained for logs sold and delivered by Cover. If the logs purchased by defendants of Cover belonged to plaintiff, his remedy, if defendants had sold them and received the money, was to sue for money had and received. If defendants still had the logs, and had done any act amounting to a conversion, plaintiff should sue in tort for their value. A party should be confined to the cause of action stated in his complaint. *Eilert v. City of Oshkosh*, 14 Wis., 586; *Hempstead v. N. Y. C. R. Co.*, 28 Barb., 485. Plaintiff having failed to show that defendants had sold these logs, and therefore received money to his use, and it appearing that defendants had purchased the logs of Cover as his own, *Smith* could not recover for them, either upon express or implied contract. His

only other ground for relief was an action in tort, which must be limited to trover, since trespass would not lie, defendants having purchased innocently of Cover. But plaintiff had failed to show a conversion; hence trover would not lie. 2 Hilliard on Torts, p. 108, and cases cited.

The following opinion was filed at the January term, 1874.

COLE, J. On the motion for a rehearing, it is claimed that we were wrong in holding under the complaint, which states a cause of action for logs sold and delivered by the plaintiff, that there could be a recovery for the logs which were sold and delivered to the defendants by Cover, even if the evidence conclusively showed that the logs which Cover delivered belonged to the plaintiff. For it is said, if the plaintiff did really own these logs, then they were wrongfully taken by Cover and sold to the defendants, and the plaintiff's remedy is by an action of trespass or trover to recover their value; or, if the logs have been converted by the defendants, he may waive the tort, affirm the sale, and sue on contract and recover the proceeds. All the evidence in regard to the sale and delivery of what may be described as the Cover logs was received on the trial without objection, and without any suggestion that there was any technical difficulty in the way of recovering their value under the complaint. Under these circumstances, if the proof showed that these logs belonged to the plaintiff, the court should have ordered an amendment of the complaint, if necessary, in order to obviate any technical objection which might exist to recovering their value in this action. It is said there was no evidence of a conversion of these logs by the defendants, or that they had sold them and received the money for them. There was ample testimony that the defendants claimed these logs as their own. They insisted that they had purchased them of Cover and paid for them, and that the plaintiff did not own them and had no interest in them. If this was not evidence of conversion — this exercising acts of ownership over the logs, and

denying the plaintiff's property in them — it is difficult to understand what would be evidence of that fact. "A conversion, in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title inconsistent with his own." 2 Greenl. Ev., sec. 642. And this fact of the assumption of the property in the logs and the right to dispose of them as their own, which the defendants have insisted upon for a long time, as the proof shows, and now put forward to defeat the plaintiff's claim, is of itself evidence of conversion. About this, it seems to us, there can be no doubt.

But it is said that the plaintiff has made no demand for this property, and that he could not recover its value except upon such demand and a refusal to deliver. It is an established fact, however, that the plaintiff has demanded payment for these logs, and that the defendants refused to pay him for them because they had paid Cover. A demand for the specific property would have been of no avail under the circumstances. Moreover, in the case of *Norden v. Jones*, 33 Wis., 600, this court adopted the rule that no party is bound to sue in tort, where, by converting the action into one on contract, the rights of the defendant are not prejudiced. It is surely more favorable to the defendants for the plaintiff to waive his claim for damages for the conversion, and recover only the value of the property; and it is certainly in accordance with the reason and principle of *Norden v. Jones* to hold the demand of payment for the logs all that it was necessary to make.

There are really no exceptions in this record which raise any of these questions so fully discussed upon the motion for a rehearing, except as they are involved in the refusal of the court to give the last two requests asked on the part of the defendants. In the former opinion, it was said that these instructions were objectionable because they ignored the question whether

the plaintiff was owner of the logs delivered by Cover. There is still a further objection to the third instruction, that it assumes that this lot of logs was delivered by Cover, and that the plaintiff did not deliver the entire quantity claimed in the complaint. The question, by whom these logs were sold and delivered, was one in controversy, and upon which conflicting testimony was given. The fourth request was, that as this action was one upon express contract for goods sold and delivered by the plaintiff, there could be no recovery if the evidence showed that the defendants purchased them of Cover. We have already said, if it appeared that the plaintiff was the real owner of the logs, and that Cover wrongfully sold them to the defendants, who have had the use and enjoyment of the property, that the plaintiff might waive the tort and recover the value thereof in this action. If there was any technical objection to a recovery under the complaint as it now stands, as all the proof in respect to the transaction was admitted without objection, the complaint should have been amended. But the fourth request was in direct conflict with the doctrine of the Norden case, and there was no error in refusing to give it to the jury.

It is further insisted that the damages are excessive, even after the amount remitted by the plaintiff. The evidence is not very satisfactory upon this point. The defendants claim that they should have credit for some items — such as boomage — which the plaintiff insists they agreed to pay themselves under the contract. The jury might have credited the testimony of the plaintiff, that the agreement was, that the defendants were to gather up the logs at their own expense, and were to take what was back, after passing through the boom, at their expense. Rejecting the items for booming expenses, which the jury might have found that the defendants were to pay, and allowing interest upon the balance due the plaintiff from January 1, 1868, to the time of trial, there would be an excess of about $11.16.

We have concluded to deny the motion for a rehearing,

and to allow the judgment of affirmance to stand, upon the plaintiff's remitting $11.16, and paying costs of this court on the appeal.

*By the Court.* — It is so ordered.