# Cases Argued and Determined

IN THE

# SUPREME COURT

OF THE

# State of South Dakota.

## Stone v. Chicago, M. & St. P. Ry. Co.

1. T. shipped a car load of cattle by defendant's road, and by the terms of the bill of lading executed by the defendant the cattle were consigned to T., care of P., order of S. & Co. The defendant delivered the cattle to P. without the order or consent of S. & Co., and without the bill of lading. *Held*, that defendant was liable to assignee of S. & Co., for the value of the cattle.

2. T. at the time of shipping said cattle drew a draft against the same on P. in favor of S. & Co., which was attached to the bill of lading, and which was discounted by S. & Co., and the proceeds paid to T. This draft not being paid, T., after the delivery of the cattle, turned over to S. & Co., two car loads of sheep as security but from which S. & Co., without any negligence or fraud on their part, failed to realize any proceeds. *Held* that S. & Co., or their assignee could recover of the defendant the amount of said draft, to the extent of the value of said cattle.

3. In an action to recover the value of personal property converted, the burden is upon the defendant to establish facts in mitigation of the damages.

(Syllabus by the Court. Opinion filed Nov. 9, 1895.)

Appeal from circuit court, Turner county. Hon. D. HANEY, Judge.

Action for damages for conversion of property. Judgment for plaintiff and defendant appeals. Affirmed.

The facts are stated in the opinion.

*Winsor & Kittredge,* for appellant.

Statements against his own interests made by a party are competent against him and are to be received with great weight. Cook v. Barr, 44 N. Y., 156; Smith v. Shulenberg, 34 Wis. 41; Winebrerner v. Brunswick, 47 N. W. 1089; Blake v. Barrett, 15 N. W. 845.

*French & Orvis,* for respondent.

CORSON, P. J. This was an action to recover $563, the value of one car load of cattle alleged to have been converted by the defendant. Judgment for plaintiff, and defendant appeals.

The facts as found by the court, briefly stated, are as follows: One D. A. Temple shipped by defendant's line, from Freeman, in this state, to the Minnesota Transfer in Minnesota, one car load of cattle, and received a bill of lading therefor. At the time of the shipment said Temple drew a draft in favor of Stone & Co. on Pierce Bros. for $563. Stone & Co. discounted this draft, attached thereto the bill of lading duly indorsed, and forwarded the same for collection. Said car load of cattle was delivered by the defendant to Pierce Bros. without the properly indorsed bill of lading, without the payment of the draft drawn against them, and without the consent of Stone & Co. At about the same time said Temple shipped two car loads of sheep, received a bill of lading therefor, and drew a draft in favor of Stone & Co. on Pierce Bros. for $450. This draft was also discounted by Stone & Co., who with bill of lading attached, forwarded it for collection. Temple went in charge of the cattle on the train. The disposition made of the cattle, sheep, and drafts is given in the language of the court in its

tenth finding of fact: "Both of said shipments of freight having been delivered by defendant to Pierce Bros., they paid the draft of $450 drawn against said sheep, but refused to pay the draft of $563 drawn against the cattle. Said cattle were retained by Pierce Bros. and sold. The sheep were delivered by them to said D. A. Temple, who subsequently delivered them to his brother, J. P. Temple, at Morristown, Minnesota, with directions to keep them for George W. Stone & Co. They were so kept for some time. George W. Stone & Co. were informed of their whereabouts, and frequently communicated with said J. P. Temple in regard to the dispostion of said sheep, claiming they should be treated as security for what was due from D. A. Temple. Neither George W. Stone & Co. nor the plaintiff notified the defendant that said sheep were held by J. P. Temple in the manner aforesaid, nor did either of them ever receive any of said sheep or any of the proceeds thereof. Said Pierce Bros. refused to retain the sheep, claiming they were scabby. D. A. Temple was not authorized by Stone & Co. or by the plaintiff to receive the sheep from Pierce Bros. He was not so authorized to deliver them to J. P. Temple, and in doing these acts he was not the agent of George W. Stone & Co. or of the plaintiff." Counsel for appellant requested the court to make the following finding, which the court refused to make: "That George W. Stone & Co. afterwards ratified the taking of the sheep as their property by J. P. Temple, and have kept the same ever since." This refusal by the court is assigned as error. The court by this request was required to find a fact in regard to which there was conflicting evidence. The court, as will be noticed in its tenth finding, found that Stone & Co. held said sheep, after they had been delivered back to D. A. Temple, only as security. The finding requested was inconsistent with the finding so made by the court. After a careful examination of the evidence upon this point, we cannot say the court was not justified in making the finding it did make, and in refusing to find as requested.

Counsel for appellant further insist that the court by its finding No. 11, in which it finds that "no evidence was offered as to the value of sheep," committed error, as they insist there was evidence of their value offered and received on the trial. And counsel call the attention of the court to a letter of Stone & Co. to J. P. Temple, in the record, in which they use the following language: "Should think they [the sheep] are worth at least $3.50 per head there, but may be mistaken somewhat." In the same letter they say, "The sooner sold, the better, provided you can get not less than $575 or $580 net to us on the 200 head." And the counsel insist that this was an admission by Stone & Co., to whose rights the plaintiff has succeeded, that the sheep were of the value of $3.50 per head. We are inclined to the opinion that the counsel are right in their contention. Blake v. Barrett (Iowa) 15 N. W. 845; Cook v. Barr, 44 N. Y. 156; Winebrenner v. Collender Co. .(Iowa) 47 N. W. 1089; Smith v. Schulenberg, 34 Wis. 41. In Cook v. Barr, *supra*, the court of appeals of New York says: "When a party to a civil action has made admissions of facts material to the issue in the action, it is always competent for the adverse party to give them in evidence; and it matters not whether the admissions were in writing or by parol, nor when nor to whom they were made. Admissions do not furnish conclusive evidence of the facts admitted, unless they were made under such circumstances as to constitute an estoppel, or were made in the pleadings in an action, when they are conclusive in that action. They may be contained in a letter addressed to the opposite party, or to a third person, and in either case are entitled to equal weight and credit. They are received in evidence because of the great probability that a party would not admit or state anything against himself or his own interest unless it were true." But in the view we take of the effect of the other findings of the court this finding does not seem to us to be a material one, or one that could affect the decision of the court in this case. If Stone & Co., as found by the court, merely ac-

cepted the sheep as security, and did not realize anything from them, the fact that they were or were not of any particular value when so accepted as security, in the absence of evidence of negligence or fraud, would seem to be of no importance in the determination of this case. It therefore becomes unnecessary to decide the question presented, at this time.

The first contention of counsel for appellant is that Stone & Co., having received the proceeds of the $450 draft, and accepted the sheep for the $563 draft, the claim of Stone & Co. was fully satisfied, and they therefore sustained no damage by reason of the conversion of the cattle. This contention is not tenable, for the reason that it assumes a fact not supported by the findings, namely, that Stone & Co. received the sheep as owners and not as security. Had Stone & Co. taken the sheep in payment of the $563 draft, there would be much force in their contention, but, as found by the court, Stone & Co. only received the sheep as security, and they realized nothing from them, and therefore the contention of counsel cannot be sustained. The fact that Stone & Co. accepted the sheep as security, and made an effort to collect the cattle draft out of the security and failed, in no wise affects their right to recover, as against the defendant, for damages sustained by them in the conversion of the cattle. The decision of this court in this case (3 S. D. 330, 53 N. W. 189) was based upon the theory that the defendant had pleaded a good defense to the action, and, under the circumstances shown, was entitled to an opportunity to prove it. The burden of establishing facts tending to mitigate the damages was upon the defendant, and, failing to sustain such defense by the evidence and findings of the court, its defense became unavailable as against the plaintiff. What disposition was in fact made of the sheep is not disclosed by the record, but it seems to be assumed by counsel on both sides that they were disposed of prior to the commencement of this action for a sum only sufficient to pay the expense of their keeping. And this seems to be the effect of the findings of the

court, as in the tenth finding he states that neither Stone & Co. nor the plaintiff received any of said sheep or any of the proceeds thereof. We shall therefore assume that such was the fact.

Counsel for appellant further contend that, if their first position is not sustained the judgment in any event should be modified and reduced to $113, the difference between the sheep draft, that was paid, and the cattle draft, that was not paid, for the reason that Pierce Bros., when they turned over the sheep to D. A. Temple, had a right to and did apply the $450 so paid on the sheep draft to the cattle draft. But the judgment, they contend, gives plaintiff in effect the receipts from the sale of the cattle, less $113, and also the sheep as security for the $450. The findings of the court are in effect opposed to appellant's theory, and their contention, in our opinion, cannot be sustained.

Our conclusions are that the legal effect of the various transactions, as found by the court, entitled the respondent to a judgment for the full amount of the cattle draft. It seems to be conceded that the delivery of the cattle without the payment of the draft against them, or the proper indorsement of the bill of lading, rendered the appellant legally liable for the amount of the draft to Stone & Co. When the sheep were delivered to Pierce Bros., and the draft drawn against them was paid, the sheep transaction, as between Stone & Co., Pierce Bros. and D. A. Temple, was closed, and the sheep were in law released from any claim by Stone & Co. Therefore, when Pierce Bros. delivered the sheep back to D. A. Temple he received them as owner, which, as the Stone & Co. draft was paid, he had the undoubted right to do. He then had the legal right to dispose of the sheep in any manner he deemed proper. In the exercise of that right he delivered the sheep to J. P. Temple, his brother, to be held by him as security, in legal effect, for the draft drawn against the cattle, upon which he (Temple) was still liable as drawer. Stone & Co. received them as such security, but, failing to realize anything from them, they still

had the right to bring this action to enforce the defendant's liability. As has been before stated, had the security been available, and Stone & Co. had received the amount due upon the draft, either from the proceeds of the sheep, or by payment by D. A. Temple, or any part of the amount, the defendant would have been entitled, as between it and Stone & Co. and this plaintiff, to the benefit of such payment, in mitigation of the damages in this action. But the defendant failing to show that Stone & Co. did in fact receive any amount, either from the proceeds of the sheep or by payment by D. A. Temple, the drawer of the draft, it failed in its defense, and there was nothing to go in mitigation of damages. The judgment is therefore correct, and must be affirmed, and it is so ordered.