UNITED CATHOLIC PARISH SCHOOLS OF BEAVER DAM EDUCATIONAL ASSOCIATION, Plaintiff-Respondent-Cross-Appellant,

v.

CARD SERVICES CENTER and First Financial Bank, Defendants-Appellants-Cross-Respondents.†

Court of Appeals

*No. 00–2029. Oral argument May 17, 2001.—Decided September 27, 2001.*

2001 WI App 229

(Also reported in 636 N.W.2d 206.)

† Petition to review denied 1-29-02.

465

On behalf of the plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Patrick J. Hodan* and *Colleen D. Ball* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee.

On behalf of the defendants-appellants-cross-respondents, the cause was submitted on the briefs of *William H. Gergen* of *Gergen, Gergen & Pretto, S.C.* of Beaver Dam.

A nonparty brief was filed by *John E. Knight* and *James E. Bartzen* of *Boardman, Suhr, Curry & Field LLP* of Madison on behalf of *Wisconsin Bankers Association.*

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. ROGGENSACK, J. United Catholic Parish Schools of Beaver Dam Educational Association (UCPS) employed Janet Gittus as its bookkeeper. Gittus wrote checks on UCPS's account with Bank One that were negotiated by First Financial Bank, in payment of Gittus's personal credit card debt. When UCPS learned of Gittus's embezzlement, it demanded that First Financial return $59,038.92, which First Financial had received from Bank One in payment of the checks. First Financial refused, and UCPS sued for conversion. As an affirmative defense, First Financial asserted that it was a holder in due course and therefore not subject to a claim of conversion. Both parties moved for summary judgment. The circuit court agreed with UCPS and granted its motion for summary judgment. However, because we conclude that under the uncontroverted facts of record First Financial is a holder in due course, it is not subject to UCPS's conversion claim. Accordingly, we reverse the judgment of the circuit court and remand for entry of judgment dismissing UCPS's complaint.

## BACKGROUND

¶ 2. UCPS is a private, educational association among several parishes in Beaver Dam. Between October 17, 1990, and October 6, 1997, UCPS's bookkeeper, Gittus, who had control and check writing authority over the UCPS student activity account at Bank One,

wrote thirty-seven checks, totaling $59,038.92[1] payable to Card Services or Card Services Center,[2] which were negotiated by First Financial. The checks were drafted and signed by Gittus without the permission of UCPS. UCPS demanded return of the $59,038.92 First Financial had received from Bank One in payment of the checks, and when First Financial refused to pay, UCPS sued First Financial alleging common law conversion and requesting compensatory and punitive damages.

¶ 3. First Financial answered and raised as an affirmative defense[3] that it is a holder in due course under WIS. STAT. § 403.302 (1999–2000).[4] As part of its motion for summary judgment requesting dismissal of UCPS's claim, First Financial submitted an affidavit stating that: (1) it negotiated the checks and applied the proceeds to pay Gittus's outstanding credit card balances; (2) there is nothing on the face of any check to indicate that Gittus was not authorized as a proper signatory; and (3) there is nothing on the face of any check that gave notice that any check was dishonored or subject to a claim or defense of any type.

¶ 4. In the affidavits submitted by UCPS, it does not allege any facts to controvert those averred by First Financial. Additionally, UCPS alleges no facts which show that First Financial had actual knowledge of a fiduciary relationship between Gittus and UCPS. In-

---

[1] The checks negotiated by First Financial are only a small part of Gittus's embezzlement of UCPS funds.

[2] Card Services Center is a division of First Financial Bank.

[3] First Financial also pled a statute of limitations defense. However, neither the statue of limitations defense nor any other of First Financial's related affirmative defenses have been argued on appeal.

[4] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

stead, UCPS contends that its common law conversion claim overrides the provisions of the Uniform Commercial Code, as enacted in Wisconsin, that relate to negotiable instruments.[5]

¶ 5. The circuit court concluded that, notwithstanding ch. 403 of the Wisconsin Statutes, a common law conversion claim prevails over statutory provisions. Therefore, it entered judgment against First Financial for $59,038.92. The court also dismissed UCPS's request for punitive damages, which had been based upon UCPS's demand that First Financial pay it $59,038.92 and First Financial's refusal to do so. First Financial appeals the judgment against it, and UCPS crossappeals the dismissal of its request for punitive damages.

## DISCUSSION

**Standard of Review.**

¶ 6. It is well established that we apply the same summary judgment methodology as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31, 34 (Ct. App. 1997). We first examine the complaint to determine whether it states a claim, and then we review the answer to determine whether it joins a material issue of fact or law. *Id.* If we conclude that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for

---

[5] Wisconsin's commercial code relating to negotiable instruments, such as bank drafts, is located in ch. 403 of the Wisconsin Statutes.

summary judgment. *Id.* at 232–33, 568 N.W.2d at 34. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute which entitle the opposing party to a trial. *Id.*

█

¶ 7. On the record before us, whether First Financial is a holder in due course involves the application of WIS. STAT. § 403.302 to undisputed facts and is therefore, a question of law that we review independently of the circuit court's conclusion. *Kane v. Kroll*, 196 Wis. 2d 389, 393, 538 N.W.2d 605, 607 (Ct. App. 1995) (citing *State v. Williams*, 104 Wis. 2d 15, 21–22, 310 N.W.2d 601, 604–05 (1981)).

## Chapter 403 Issues.

¶ 8. The Uniform Commercial Code was enacted in Wisconsin through ch. 158 of the Laws of 1963, thereby causing Wisconsin to become the twenty-eighth state which had then enacted the Uniform Commercial Code into law.[6] Orrin L. Helstad, *The Impact of the Uniform Commercial Code On Wisconsin Law,* 1964 WIS. L. REV. 355, 355. The Uniform Commercial Code has been revised generally through the years and Wisconsin's provisions have been revised as well.

### 1. WISCONSIN STAT. § 403.302, Holder in Due Course.

¶ 9. WISCONSIN STAT. § 403.302 is part of Wisconsin's enactment of the Uniform Commercial Code. It sets forth how holder in due course status is

---

[6] The effective date of Wisconsin's commercial code is July 1, 1965.

471

achieved and the results which flow from that status. In order to encourage the use of negotiable instruments in commercial transactions, a holder in due course is insulated from nearly all claims of any party. *See* RICHARD E. SPEIDEL, ET AL., COMMERCIAL AND CONSUMER LAW 1297–98 (2d ed. 1974). For example, a holder in due course is not subject to a claim of common law conversion. *See* WIS. STAT. § 403.305(2); SPEIDEL, ET AL., COMMERCIAL AND CONSUMER LAW 1298.

¶ 10. The determination of whether one is a holder in due course begins with WIS. STAT. § 403.302. It states in relevant part:

**Holder in due course. (1)** . . . "[H]older in due course" means the holder of an instrument if all of the following apply:

(a) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity.

(b) The holder took the instrument:

1. For value;

2. In good faith;

3. Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;

4. Without notice that the instrument contains an unauthorized signature or has been altered;

5. Without notice of any claim to the instrument described in s. 403.306; and

6. Without notice that any party has a defense or a claim in recoupment described in s. 403.305(1).[7]

¶ 11. Because the holder in due course defense is usually employed at the expense of an innocent party, WIS. STAT. § 403.302 establishes strict requirements for determining holder in due course status. Those requirements attempt to identify holders[8] that are worthy, in a commercial sense, of protection and to separate them from those who are not. Accordingly, a holder must take the instrument (1) for value; (2) in good faith; and (3) without notice that it is overdue or has been dishonored or that there is any defense or claim to it on the part of any person. *Kane*, 196 Wis. 2d at 393–94, 538 N.W.2d at 607.

¶ 12. A holder takes an instrument "for value" when he takes it in payment for an antecedent claim against any person. WIS. STAT. § 403.303(1)(c); *Kane*, 196 Wis. 2d at 394, 538 N.W.2d at 607. Here, the affidavit of Valentine Glytas establishes the uncontroverted fact that First Financial took the checks at issue in payment of Gittus's outstanding credit card balances. This satisfies the first part of the *Kane* test.

---

[7] This section of Wisconsin's commercial code was revised significantly by 1995 Wis. Act 449. However, the revisions do not affect our decision in this appeal.

[8] A holder of a negotiable instrument is defined as "the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." Wis. Stat. § 401.201(20).

¶ 13. A holder takes an instrument in "good faith" when he takes it with "honesty in fact and the observance of reasonable commercial standards of fair dealing." Wis. Stat. § 403.103(1)(d).[9] Glytas avers that First Financial had no reason to suspect there was any problem with collecting payment on the checks when it accepted them, as they appeared to be authentic, did not have any facial irregularities and were accepted to pay Gittus's credit card debts. First Financial supports these factual assertions by arguing that Gittus's paying her credit card debt with a UCPS check could have been a legitimate reimbursement for purchases she had made for UCPS on her credit card. UCPS has submitted no affidavit to counter either of these facts or First Financial's argument that it did not know that Gittus was defrauding UCPS by writing the checks. We also note that the checks were drafted over a seven-year period, without any complaint from UCPS that Gittus had no authority to write them to pay her credit card

---

[9] The definition of "good faith" applicable to ch. 403 transactions was revised significantly by 1995 Wis. Act 449, effective August 1, 1996. Prior to the revision, "good faith" for ch. 403 purposes required only "honesty in fact in the conduct or transaction concerned." Wis. Stat. § 401.201(19); *Kane v. Kroll*, 196 Wis. 2d 389, 394, 538 N.W.2d 605, 607 (Ct. App. 1995). No party brought the statutory change to our attention or argued that the addition of the requirement to observe "reasonable commercial standards" in order to show good faith should, or should not, affect any part of UCPS's claim. UCPS never replied to First Financial's argument that it took the checks in good faith, under either standard. Therefore, even though we note that six of the checks were negotiated after the effective date of 1995 Wis. Act 449, we do not decide whether requiring First Financial to apply "reasonable commercial standards" when it took those checks would cause a different outcome for them.

debt. Therefore, we conclude that under the undisputed facts of record, First Financial took the checks in good faith.

¶ 14. A check is taken "without notice" that it is overdue, has been dishonored or of any defense against it or claim to it on the part of any person if, when the check was negotiated, the person who took the check (1) did not have actual knowledge of such fact or facts, (2) did not receive a notice or notification of such fact or facts, or (3) from the circumstances known at that time, did not have reason to know such fact or facts exist. Wis. Stat. § 401.201(25). In order to be effective, notice must have been received at a time and in a manner which would have given a reasonable opportunity to act on it.

¶ 15. Satisfying the statutory requirement of being "without notice" requires First Financial to establish a negative, and therefore, the initial burden it must carry is slight. *Kane*, 196 Wis. 2d at 395, 538 N.W.2d at 608. Glytas avers that First Financial had no notice or knowledge that the checks were overdue, dishonored or that there was an uncured default or that anyone had any claim in recoupment or otherwise in regard to the checks. Copies of the checks are attached to the complaint, and we note that all appear regular. Additionally, UCPS has submitted no affidavit to contradict Glytas's assertions. Instead UCPS argues that First Financial should have known that Gittus had no authority to write checks for her own benefit on a UCPS account. But, as we have noted earlier, First Financial had no way to know the checks were unauthorized, especially since there were thirty-seven of them written over an extended period of time and there could have been legitimate reasons for them. Furthermore, the policy

underlying Wisconsin's commercial code is to promote certainty in commercial transactions and to place the loss on the party in the best position to prevent it. *See* WIS. STAT. § 401.102(2); *Allied Ins. Ctr., Inc. v. Wauwatosa Sav. & Loan Ass'n,* 200 Wis. 2d 369, 378, 546 N.W.2d 544, 548 (Ct. App. 1996). Here, UCPS was in the best position to prevent the loss by having its accounts audited or, at the least, having its bank accounts reconciled by someone other than Gittus. Therefore, we conclude that Glytas's affidavit provides uncontroverted facts sufficient to establish that First Financial took the checks without notice, and accordingly, it has made a *prima facie* case for holder in due course status.

### *2. WISCONSIN STAT. § 403.307, Fiduciaries.*

¶ 16. In contesting First Financial's status as a holder in due course, UCPS asserts that under WIS. STAT. § 403.307 Gittus was a fiduciary and therefore, that First Financial cannot be a holder in due course. Section 403.307 states in relevant part:

> **Notice of breach of fiduciary duty. (1)** In this section:
>
> (a) "Fiduciary" means an agent, trustee, partner, corporate officer or director or other representative owing a fiduciary duty with respect to an instrument.
>
> . . . .
>
> (2) If an instrument is taken from a fiduciary for payment or collection or for value, the taker has knowledge of the fiduciary status of the fiduciary and the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:
>
> . . . .

476

¶ 17. WISCONSIN STAT. § 403.307 sets forth a type of WIS. STAT. § 403.306 claim referenced in WIS. STAT. § 403.302(1)(b)5, and therefore, it is a provision that could be used to defeat holder in due course status. UNIF. COMMERCIAL CODE § 3–307 cmt. 2, 2 U.L.A. 77–78 (1991). It can be applied to Gittus's transactions and permit recoupment from First Financial if UCPS can show, among other things, that Gittus was a fiduciary and that First Financial had knowledge of her fiduciary status at the time it enforced payment of the checks.[10]

¶ 18. Wisconsin's commercial code defines the term "has knowledge." It instructs: "A person 'knows' or has 'knowledge' of a fact when the person has actual knowledge of it." WIS. STAT. § 401.201(23m). The definition of "has knowledge" has been part of Wisconsin's commercial code throughout the period of time during which the transactions at issue occurred. Because First Financial has made a *prima facie* showing of holder in due course status, it is UCPS's burden to satisfy the provisions of § 401.201(23m), if it employs WIS. STAT. § 403.307 to maintain a claim against First Financial. *See Kane*, 196 Wis. 2d at 395–96, 538 N.W.2d at 608.

---

[10] We note that WIS. STAT. § 403.307 was not an effective part of the Wisconsin Statutes until August 1, 1996, as it was added as part of a large statutory revision in 1995. 1995 Wis. Act 449. However, as some of the transactions occurred after August 1, 1996, and because First Financial does not argue that § 403.307 is not applicable to most of the checks at issue here, we will address this section as though it pertained to all of the checks, even though some were negotiated prior to the effective date of the provision.

¶ 19. UCPS submitted no proof that First Financial had actual knowledge that Gittus was a fiduciary of UCPS when these transactions occurred. And, UCPS ignores the issue of establishing First Financial's actual knowledge of this relationship in its argument on appeal. It simply maintains, without any proof sufficient to establish a *prima facie* case for summary judgment, that anyone who signed a check for UCPS was a fiduciary. That argument is insufficient, as a matter of law, to establish First Financial's actual knowledge of such relationship. Accordingly, even if we were to assume, *arguendo,* that Gittus did have a WIS. STAT. § 403.307 fiduciary relationship[11] to UCPS, we would nevertheless conclude that UCPS has not made a *prima facie* showing for one of the initial criteria necessary to our consideration of whether the transactions fall within the parameters of § 403.307, *i.e.,* First Financial's actual knowledge of that relationship. Accordingly, § 403.307 provides no avenue for defeating First Financial's status as a holder in due course.

### 3. Common Law Conversion.

¶ 20. UCPS argues to us, as it did to the circuit court, that the law that has been applied to the conversion of personal property should be applied here rather than ch. 403 of the Wisconsin Statutes. It cites *Eldred v. Oconto Co.,* 33 Wis. 133 (1873), and *Smith v. Schulenberg,* 34 Wis. 41 (1874), as support for this contention. We are unpersuaded. Both cases were decided long before Wisconsin's commercial code was enacted, and

---

[11] We do not decide whether Gittus did have a fiduciary relationship to UCPS.

both cases deal with logs, not with negotiable instruments. The policies of encouraging reliance on the face of negotiable instruments in order to facilitate commercial transactions in negotiable paper that occur frequently throughout Wisconsin are not parallel to those that drive a trover action for the possession of logs. Furthermore, while some claims for relief may exist side-by-side with claims under Wisconsin's commercial code, they cannot prevail if they conflict with code provisions. *Weber, Leicht, Gohr & Assocs. v. Liberty Bank*, 2000 WI App 249, ¶ 12, 239 Wis. 2d 461, 471, 620 N.W.2d 472, 476, *review denied,* 2001 WI 1, 239 Wis. 2d 772, 621 N.W.2d 629. Here, UCPS's claim for conversion would supplant the defenses available to a holder in due course, and this it cannot do. Accordingly, we reverse the judgment of the circuit court and remand with directions to dismiss UCPS's complaint.

## CONCLUSION

¶ 21. Because we conclude that under the uncontroverted facts of record First Financial is a holder in due course, it is not subject to UCPS's conversion claim. Accordingly, we reverse the judgment of the circuit court and remand for entry of judgment dismissing UCPS's complaint. Additionally, because of our decision on the appeal, we do not reach the issue presented by the cross-appeal.

*By the Court.*—Judgment reversed and cause remanded.