**CHOUTEAU AUTO MART, INC., and Northland Acceptance Corp., Appellants,**

v.

**FIRST BANK OF MISSOURI, Respondent.**

No. SC 83410.

Supreme Court of Missouri, En Banc.

Sept. 11, 2001.

Rehearing Denied Oct. 23, 2001.

Michael S. Shipley, Vincent F. Igoe, Jr., Liberty, for Appellant.

Matthew J. Verschelden, Kansas City, for Respondent.

BENTON, Judge.

Chouteau Auto Mart, Inc. and Northland Acceptance Corporation sued First Bank of Missouri for depositing the proceeds of corporate checks, payable to the Bank, into an officer's personal account. The circuit court granted the Bank summary judgment. Chouteau and Northland appeal. After opinion, the Court of Appeals transferred the case to this Court. *Mo. Const. art. V, sec. 10.* Affirmed in part, reversed in part, and remanded.

## I.

This Court reviews the record in the light most favorable to Chouteau and Northland (against whom judgment was entered), according them the benefit of all reasonable inferences from the record. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

Janice Thompson was an employee, officer, and fiduciary of both Chouteau and Northland. She was authorized to write checks on both companies' accounts and to withdraw deposits at First Bank. Thompson individually as Secretary—with power equal to the President—was authorized by corporate resolution to make any "contracts, agreements, stipulations and orders" about deposits, loans or "any other business transaction by and between this corporation [Chouteau] and this Financial Institution [First Bank]."

Chouteau had two checking accounts at the Bank (Northland's account was at a

different bank). From July 1993 to January 1996, Thompson wrote numerous checks, payable to the Bank, for legitimate purposes—including deposits to a federal-tax-withholding account, purchases of cashier's checks, and payments on loans, sight drafts, and a line of credit.

At issue are 83 other checks Thompson wrote from Chouteau's accounts totaling $843,624.98, and 4 checks from Northland's account totaling $59,002.93. All 87 checks were payable to the Bank as payee. Thompson presented each check to the Bank with a deposit slip for one of her two personal accounts at the Bank. Only the Bank endorsed the checks.

Neither Chouteau nor Northland authorized Thompson to conduct these 87 transactions. By depositing these checks in her own accounts, Thompson breached her fiduciary duty to both corporations.

Chouteau and Northland sued the Bank for conversion, money-had-and-received, and breach of the Uniform Fiduciaries Law, sections 456.240 to 456.350 RSMo 1994.[1] Both sides moved for summary judgment. In June 1999, the circuit court granted partial summary judgment to the Bank on the theories of conversion and money-had-and-received. In January 2000, the circuit court granted the Bank summary judgment on the remaining claim–breach of the UFL. Chouteau and Northland appeal.

### II.

Summary judgment is appropriate when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Rule 74.04(c)(3)*.

■ To succeed on summary judgment, a defendant must show: (1) undisputed facts negating any of plaintiffs' re-

quired elements; (2) the plaintiffs, after adequate time for discovery, cannot produce evidence sufficient to find one of plaintiffs' required elements; *or* (3) there is no genuine dispute as to each fact necessary to support a properly-pleaded affirmative defense. *ITT*, 854 S.W.2d at 381. This Court's review is *de novo. Id.* at 376.

### III.

■ The parties agree that under the UFL, the Bank would be liable if it (1) had "actual knowledge" that Thompson was breaching her fiduciary duty in depositing the checks, or (2) received the deposits or paid the checks in "bad faith." These requirements appear in section 456.310 and the first sentence of section 456.270. See Appendix A for the text of both sections, and *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 491–93 (Mo. banc 1980) for explanation of these requirements.

■ Chouteau and Northland concede they cannot show actual knowledge or bad faith, but invoke the second sentence of section 456.270. Under it, a payee is liable to the principal for a fiduciary's breach if either: (1) the check is payable to a personal creditor of the fiduciary and delivered to the creditor to pay or secure the fiduciary's personal debt to the actual knowledge of the creditor, or (2) the check is drawn and delivered in any transaction *known by the payee* to be for the personal benefit of the fiduciary. *Section 456.270* (emphasis added).

Chouteau and Northland do not satisfy the first alternative, as they stipulated that the checks were not used for Thompson's personal debt with the Bank.

■ For the second alternative, the Bank must know that Thompson is using the fiduciary funds for her personal bene-

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

fit. The issue is the level of knowledge required by the phrase *known by the payee.* Chouteau and Northland contend that deposits to a fiduciary's personal account show that a personal benefit was known by the payee Bank. The answer to this contention depends on the law applicable when the transactions occurred.

### A.

For transactions before August 28, 1994, section 400.3–307(b)(4) of the Uniform Commercial Code provided:

> If an instrument is issued by the represented person [the corporation] or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

*S.B. 448, 1992 Mo. Laws 998.* Under the UCC, if the taker has notice of a breach of fiduciary duty, the taker is subject to all claims against the instrument or its proceeds. *Sections 400.3–306; 400.3–302(a)(2)(v).*

In section 400.3–307(b)(4), the General Assembly repeated the first two alternatives from section 456.270. The legislature then added a third alternative: deposit to a personal account.

In this case, the Bank deposited the proceeds of corporate checks into personal accounts. By section 400.3–307(b)(4)(iii), the Bank had notice of the breach of fiduciary duty. Under the UCC, the Bank is thus subject to the claims of Chouteau and Northland for the amount of the checks paid before August 28, 1994. Judgment for the Bank was inappropriate for these transactions.

### B.

For transactions on or after August 28, 1994, the General Assembly deleted the third alternative:

> If an instrument is issued by the represented person [the corporation] or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, or (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary. ~~(or (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person).~~

*S.B. 701, 1994 Mo. Laws 1106,* codified as *section 400.3–307(b)(4).* With this deletion, the alternatives in section 400.3–307(b)(4) of the UCC are identical with those in the second sentence of section 456.270 of the UFL.

The legislative amendment suggests that mere deposit in a personal account no longer gives the Bank notice of a breach of fiduciary duty. The UCC's full context makes clear: the second alternative "known by the payee [taker] to be for the personal benefit of the fiduciary" does not encompass deposit of corporate checks in a fiduciary's personal account. *Sections 456.270; 400.3–307(b)(4).* In the UCC, "knows" means "actual knowledge." *Section 400.1–201(25), (27).* Because the UCC and the UFL use identical phrases, both must be interpreted to require actual knowledge by the payee [taker] that the transaction is for the personal benefit of the fiduciary. See *Citizens Elec. Corp. v. Director of Revenue,* 766 S.W.2d 450, 452 (Mo. banc 1989). The General Assembly

has made obsolete this Court's observations in footnote 2 of *Trenton Trust Co.,* 599 S.W.2d at 489 n. 2.

The parties stipulated that when Thompson made the deposits, the Bank "had no actual knowledge that Thompson was not authorized to deposit the checks [into her personal accounts]" and "had no actual knowledge that Thompson was breaching or intending to breach her fiduciary duty to Chouteau or Northland." For transactions on or after August 28, 1994, the Bank is not liable for the deposits to Thompson's personal accounts.

### IV.

Chouteau and Northland at times propose that this case be resolved on common law and general banking principles, without considering the uniform acts. To the contrary, by enacting the UFL and the UCC, the General Assembly has specifically addressed the liability for banks dealing with fiduciaries. See *Trenton Trust Co.,* 599 S.W.2d at 490; *City of Wellston v. Jackson,* 965 S.W.2d 867, 869 (Mo.App. 1998). Chouteau and Northland's main authority—*Wright v. The Mechanics Bank of St. Joseph,* 466 S.W.2d 174 (Mo.App. 1971)—is particularly inapposite because the transactions there occurred before the enactment of the UFL in 1959 and the UCC in 1963. See *S.B. 121, sections 456.240 to 456.350 RSMo 1959; S.B. 2, 1963 Mo. Law 503.*

### V.

Judgment for the Bank was proper only as to transactions on or after August 28, 1994. The judgment is affirmed in part, reversed in part, and the case remanded.

LIMBAUGH, C.J., WHITE, HOLSTEIN, WOLFF and PRICE, JJ., and EHLMANN, Sp.J., concur.

LAURA DENVIR STITH, J., not participating.

### Appendix A

Section 456.270 provides:

If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument.

Section 456.310 provides:

If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and endorsed by him, if he is empowered to endorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fidu-

ciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.