CHOUTEAU AUTO MART,
INC., Respondent,

v.

FIRST BANK OF MISSOURI,
Appellant.

No. WD 63333.

Missouri Court of Appeals,
Western District.

Aug. 10, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 28, 2004.

Application for Transfer Denied
Nov. 23, 2004.

John R. Shank, Jr., Kansas City, MO, for appellant.

Michael Shipley, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

This is Chouteau III. At issue once again is the propriety of summary judgment against First Bank of Missouri after an employee and officer of Chouteau Auto Mart, Inc., embezzled funds by drawing checks on Chouteau's account made payable to the Bank and depositing them in her own personal account at First Bank. The Bank argues that summary judgment was improper because Chouteau failed to overcome the Bank's affirmative defenses. We affirm.

## FACTS AND PROCEDURAL HISTORY

Janice Thompson was an employee and officer of Chouteau and was authorized to write corporate checks on both of the company's accounts with First Bank. Over many years of employment, her job evolved from simple bookkeeping to being in charge of virtually all of Chouteau's financial activities and record keeping. Apparently few financial controls were in place as Thompson was solely responsible for receiving, reviewing, and reconciling the bank statements and canceled checks. Between 1993 and 1996, Thompson abused this responsibility by embezzling company funds. She wrote checks made payable to First Bank, presented them to the Bank's tellers, and told them how to deposit the checks. In some instances she told them to apply the proceeds for legitimate purposes such as to transfer funds to another company account, to make company debt payments to the bank, or to purchase cashiers checks for the company. In other instances she told the tellers to deposit company checks made payable to the Bank into her personal account. Thompson made some eighty-seven company checks payable to the Bank and then deposited the funds in her own personal First Bank account between 1993 and 1996.[1]

After discovering Thompson's actions, Chouteau filed a suit against First Bank alleging multiple theories of recovery. Only the claim under section 456.270,[2] The Uniform Fiduciaries Law ("UFL"), is involved here.[3] The parties were able to agree upon a stipulated set of facts and filed cross motions for summary judgment on the UFL claim. In addition to the facts stated above, the parties stipulated that the Bank did not have actual knowledge

---

1. Chouteau claimed that Thompson stole nearly one million dollars over three years including additional checks of the company that were made payable directly to Thompson and that are not the subject of any claim in this matter.

2. All citations are to RSMo 2000, unless otherwise indicated.

3. First Bank received summary judgment in its favor on the other theories, and Chouteau has not appealed that judgment.

that Thompson breached her fiduciary duty to Chouteau and did not use the funds to pay a personal debt or company debt. After the court granted summary judgment in favor of First Bank, Chouteau appealed to this court and the case was eventually transferred to the Missouri Supreme Court where the decision was reversed in part and affirmed in part. We will refer to the Supreme Court's opinion as *Chouteau I. Chouteau Auto Mart, Inc. v. First Bank of Mo.*, 55 S.W.3d 358, 362 (Mo. banc 2001). The Court held that the Bank was "subject to" Chouteau's claims for checks written prior to August 28, 1994, and affirmed the award of summary judgment for the Bank as to all checks written after that date. *Id.* at 361–62. The Court explained that First Bank was not subject to claims after that date because of a statutory change effective August 28, 1994. Between July 26, 1993, and August 28, 1994, Thompson wrote 31 such checks totaling $272,450.00.

The UFL and UCC have similar provisions concerning when a bank has notice that a customer's fiduciary is using company funds for the fiduciary's personal benefit. The Supreme Court looked to section 400.3–307(b)(4) of the Uniform Commercial Code in order to determine under what circumstances the Bank "knew" Thompson was using Chouteau's funds for her own personal benefit as required by section 456.270. *Id.* at 361. Before sub-section (iii) was repealed effective August 28, 1994, section 400.3–307(b)(4) provided:

> If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is (i) taken in payment of or as security for a debt known by the taker to be the personal debt of the fiduciary, (ii) taken in a transaction known by the taker to be for the personal benefit of the fiduciary, or *(iii) depos-*

> ·*ited to an account other than an account of the fiduciary, as such, or an account of the represented person.*

§ 400.3–307(b)(4), RSMo Supp.1993 (emphasis added). The Supreme Court found that, prior to its being repealed, section 400.3–307(b)(4)(iii) provided that under the stipulated facts the Bank "knew" Thompson was drawing money from Chouteau's account for her personal benefit when she deposited the money into her own account. *Id.*

After remand from the Supreme Court, the trial court entered summary judgment in favor of Chouteau. The Bank then appealed to this court. We denied First Bank's attempt to relitigate whether Chouteau stated a claim, holding that it was the law of the case. We reversed, however, because Chouteau, the moving party, had not sufficiently carried its burden and disproved each affirmative defense raised by the Bank. *Chouteau Auto Mart, Inc. v. First Bank of Mo.*, 91 S.W.3d 655, 659 (Mo.App.2002) (*"Chouteau II "*). On remand, the trial court once again entered summary judgment for Chouteau finding that none of the Bank's well-pled affirmative defenses were viable. The Bank appeals this determination raising six points of error.

## STANDARD OF REVIEW

Our review is essentially *de novo* as we need not defer to the trial court's judgment. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will, however, review the record in the light most favorable to the Bank, the party against whom judgment was entered, and afford it all reasonable inferences therefrom. *Id.* We will affirm the trial court's award of summary judgment if we find there is no genuine issue as to any materi-

al fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6).

## DISCUSSION

### Point I: The five-year period of Section 516.120(2) is the applicable statute of limitations

■ The Bank's first point on appeal is that the trial court erred in granting summary judgment to Chouteau because the court applied the wrong statute of limitations. The question of which statute of limitations applies is a question of law. *State v. Rains,* 49 S.W.3d 828, 831 (Mo. App.2001). The trial court found the relevant limitation period was the five-year period found in section 516.120(2), which applies to "[a]n action upon a liability created by a statute other than a penalty or forfeiture[.]" The court reasoned that the Bank's liability to Chouteau was created by the UFL. Because the UFL has no pertinent statute of limitations itself, the trial court found that section 516.120(2) of the general statute of limitations applied. The Bank argues that the applicable statute of limitations is actually the three-year limitation period found in section 400.3–118(g)(iii). That section, as part of the Uniform Commercial Code, provides, "Unless governed by other law regarding claims for indemnity or contribution, an action … (iii) *to enforce an obligation, duty, or right arising under this Article* and not governed by this section must be commenced within three years after the cause of action accrues." (emphasis added).

■ Thus, our threshold question is whether the Bank's liability to Chouteau arises from a duty imposed by the UCC or by the UFL. Chouteau argues that its claim arises under section 456.270 of the UFL:

> If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that this action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, **or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument.**

(emphasis added).

The Bank argues that Chouteau's claim against it arises under section 400.3–306, which states:

> A person taking an, instrument, other than a person having rights of a holder in due course,[4] **is subject to a claim of a property or possessory right in the instrument or its proceeds,** including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in

---

4. Bank acknowledges that it cannot have the status of a holder in due course under these facts. *See* section 400.3–302(a)(2)(v). *See* also *Dalton & Marberry, P.C. v. NationsBank,* 982 S.W.2d 231, 235 (Mo. banc 1998).

due course takes free of the claim to the instrument.

(emphasis added).

The obvious incompleteness of this position, as recognized by the Bank, is that section 400.3–306 does not set forth any elements of a claim. Rather, the Bank argues that when sections 400.3–306 and 400.3–307(b)(4), RSMo Supp.1993, are read together, they create the duty or obligation upon which Chouteau's claim is based. Section 400.3–307, entitled "Notice of breach of fiduciary duty," defines the term "fiduciary" and "represented person." [5] Even when read together, the two sections contain no direct language imposing a liability, nor do they purport to set forth all the elements of a claim against the Bank. By contrast, section 456.270 contains specific language imposing liability upon a payee under certain conditions.

The Bank's argument relies heavily on the following language found in *Chouteau I*:

Under the UCC, the Bank is thus subject to the claims of Chouteau ... for the amount of the checks paid before August 28, 1994.

55 S.W.3d at 361.

The Bank also points to another passage:

To the contrary, by enacting the UFL and the UCC, the General Assembly has specifically addressed the liability for banks dealing with fiduciaries.

*Id.* at 362.

Based on this language, the Bank argues that Chouteau's "right" to the money embezzled by Thompson prior to August 28, 1994, comes from sections 400.3–306 and 400.3–307(b)(4)(iii), RSMo Supp.1993. The Bank, however, misstates both the holding and analysis of *"Chouteau I."* There the

Court stated, "The parties agree that under the UFL, the Bank would be liable if it (1) had **'actual knowledge'** that Thompson was breaching her fiduciary duty in depositing the checks, or (2) received the deposits or paid the checks in 'bad faith.' " 55 S.W.3d at 360. The court then considered the application of the second sentence of section 456.270, which imposes liability upon a third person for breach of fiduciary duty to the principal if the check is either used to pay a personal debt of the fiduciary (Thompson) *or the transaction is known by the payee (Bank) to be for the fiduciary's personal benefit.* (emphasis added). The Court then stated the issue as "the level of knowledge required by the phrase 'known by the payee.' " *Id.* at 361.

The Court pointed out that section 400.3–307(b)(4), RSMo Supp.1993, of the UCC repeated the same two options for defining knowledge as section 456.270 but then added a third option where the principal's check with the bank as payee is deposited into a personal account of the fiduciary. The Supreme Court simply looked to section 400.3–307(b)(4), RSMo Supp. 1993, in order to determine under what circumstances the Bank "knew" Thompson drew money on Chouteau's account for her personal benefit as required by section 456.270 of the UFL. *Id.* at 361. That doesn't mean Chouteau's claim against the Bank was transformed into one under the UCC. Chouteau's claim against the Bank has always been and remains a claim under section 456.270 of the UFL.

Section 400.3–307(b)(4) does not itself give anyone a "right" to recover under the UCC. The comment to section 400.3–307 provides, "Section 3–307 is intended to clarify the law by stating rules that com-

**5.** Under these definitions Thompson was the fiduciary and Chouteau as her corporate principal was the represented person.

prehensively cover the issue of when the taker of an instrument has notice of breach of a fiduciary duty *and thus notice of a claim to the instrument or its proceeds.*" (emphasis added). This provision tells us when the taker of an instrument has notice of a claim; it does not itself provide the basis for a claim.

The fact that section 400.3–307 does not itself provide Chouteau or anyone else a "right" to recover under Article 3 of the UCC makes it clear that section 400.3–118(g)(iii) is not the applicable statute of limitations in this case. In *Chouteau I* the Supreme Court simply looked to the UCC provision that defined when a taker of an instrument has notice of a breach of fiduciary duty so that the UFL and the UCC would be interpreted consistently. *See Chouteau Auto Mart, Inc.,* 55 S.W.3d at 361.

The only case the Bank relies on as support for its argument that a UCC statute of limitations should be applied to this claim is *United Catholic Parish Schools of Beaver Dam Educational Ass'n v. Card Services Center,* 248 Wis.2d 463, 636 N.W.2d 206 (Ct.App.2001). The case, however, provides no such support. There, the plaintiffs asserted a common law claim for conversion, to which the Wisconsin Court of Appeals held a UCC holder in due course defense could be applied. *Id.* at 213. The court stated, "[W]hile some claims for relief may exist side-by-side with claims under Wisconsin's commercial code, they cannot prevail if they conflict with code provisions." *Id.* Because the transaction at issue concerned negotiable instruments, the court found that the policy underlying the UCC required that the holder in due course defense be made available to the defendants. *Id.*

This holding does not mean, as the Bank suggests, that all provisions of the UCC should be applied to UFL claims. In

*Chouteau I* the Missouri Supreme Court actually addressed an argument similar to the one presented in *Card Services Center.* There the Court said:

Chouteau and Northland at times propose that this case be resolved on common law and general banking principles, without considering the uniform acts. To the contrary, by enacting the UFL and the UCC, the General Assembly has specifically addressed the liability for banks dealing with fiduciaries.... Chouteau and Northland's main authority ... is particularly inapposite because the transactions there occurred before the enactment of the UFL in 1959 and the UCC in 1963.

55 S.W.3d at 362. The conflicts addressed in *Card Services Center* and in the preceding language from *Chouteau I* both concern the interaction between common law and subsequently enacted statutes, not the interaction between the UFL and the UCC. *Card Services Center* does not, then, provide any support for the Bank's argument that a UCC statute of limitations should be applied to this UFL claim.

The UFL itself does not contain an applicable statute of limitations provision, and no Missouri court has yet decided which limitations provision applies to a claim under the UFL. *In re Lauer,* 98 F.3d 378, 385 (8th Cir.1996). Chouteau claims that the Eighth Circuit has, however, decided the issue. In *Lauer* the court found that "the most directly relevant statute of limitations is that in Section 516.120." *Id.* The court went on to state, "Section 516.120 provides that in the absence of a more narrowly tailored limitations period, any action pursuant to a Missouri statute must be commenced within five years." *Id.*

The analysis in *Lauer* is of only limited use, however. The appeal was from a bankruptcy court ruling granting summary

judgment to the defendant because the plaintiffs had not satisfied a two-year statute of limitations in section 456.630. The claim alleged that the bank loaned money to the fiduciaries in question with actual knowledge that they were violating their fiduciary duty. 98 F.3d at 383. The bankruptcy court found that the two-year limitation period found in section 456.630 was applicable to the plaintiffs' UFL claim because the claim "sound[ed] in fraud." *Id.* at 384. In reversing the Eighth Circuit stated:

> As the quotation above from Count II of the complaint illustrates, it does not assert a claim for common law or other fraud.... Instead, Count II fairly clearly asserts that [the bank] violated the Missouri Uniform Fiduciaries Law.... Contrary to appellees' contentions in their brief and at oral argument, a violation of the Uniform Fiduciaries Law does not rest upon an assertion of fraud.

*Id.*

There is no contention here that Chouteau's claim sounds in fraud or that it is of the type governed by the special limitations period of section 456.630. The Bank correctly argues that even if section 516.120 provides the most applicable limitation period for a UFL claim, as *Lauer* holds, the principle is still subject to section 516.300, which provides that the provisions of Chapter 516 do not apply if another statute in some other chapter provides a different limitation period.

Because section 400.3–118 does not clearly state its application to this type of claim and because we find, as discussed above, that Chouteau's claim is not founded upon a right given or an obligation imposed by the UCC, section 516.120 provides the applicable statute of limitations.

The trial court specifically found that subsection (2) of section 516.120 applied. Subsection (2) concerns claims created by statute. Although not raised by the parties, we do not and need not determine whether the claim against the Bank arises solely from the UFL as opposed to common law. In *Chouteau I* the Court rejected a contention that the case be resolved on common law principles without consideration of the UCC and UFL. 55 S.W.3d at 362. Nevertheless we note that in *Dalton & Marberry,* the Supreme Court upheld a judgment against a bank where a bookkeeper embezzled funds from her employer, based only on common law principles and without mention of the UFL. 982 S.W.2d 231 (Mo. banc 1998). The embezzlement occurred under different circumstances, but the Court modified the common law cause of action by virtue of a UCC provision. *Id.* at 236–37. We are thus not certain whether the UFL and UCC have totally supplanted the common law claims against banks involving a breach of fiduciary duty or whether those laws are seen only to supplement or modify the common law causes of action. We need not determine the issue, however, because even if section 516.120(2) does not apply, the five-year limitation period of 516.120(4) would govern. Chouteau's claim was timely filed.

Point denied.

### Point II: Section 400.4–406(f) does not provide the Bank with a viable affirmative defense.

■ The Bank's next point on appeal is that the trial court erred in entering summary judgment in favor of Chouteau by finding that section 400.4–406(f) did not provide the Bank with a viable affirmative defense. Section 400.4–406(f) states, "[A] customer who does not within one year after the statement or items are made available to the customer ... discover and report the customer's unauthorized signature on or any alteration on the item is

precluded from asserting against the bank the unauthorized signature or alteration." "Unauthorized signature" is defined in section 400.1–201(44) as a signature "made without actual, implied, or apparent authority and includes a forgery." The Bank, in its brief, refers to a comment to section 400.3–403, which states, " 'Unauthorized' signature is defined in Section 1–201(43)[ 6] as one that includes a forgery as well as a signature made by one exceeding actual or apparent authority."

The Bank argues that Thompson exceeded her actual authority when she signed the checks in question and, therefore, section 400.4–406(f) provides a viable affirmative defense. This argument fails for two reasons. One of the parties' stipulated facts states, "That at all relevant times, Thompson was authorized to sign checks drawn on the Chouteau Car Account, the Chouteau Expense Account and the Northland Account." Thompson's signature on the checks at issue was not "unauthorized" as defined by section 400.1–201(44). Nor does the summary judgment record support a finding that ratification occurred because Thompson's endorsement of the checks was an unauthorized signature. Without deciding whether the customer's duty includes examining endorsements, the record shows that the Bank itself was the endorsee and the cancelled checks did not indicate that the funds went to Thompson's accounts.

The Bank's argument seems to be that Thompson's signature was only "authorized" on those checks drawn for a legitimate purpose. Her signature on the checks used to embezzle funds was, then, "unauthorized" because in signing those checks she exceeded her actual authority. Thompson was, however, at all times and without restriction, authorized to sign company checks. She did not exceed her actual authority, even by signing checks used to embezzle funds. She was authorized to sign the checks; she was not authorized to deposit the funds in her personal account.

■ Chouteau asks that we impose sanctions on the Bank for submitting a frivolous argument in violation of Rule 84.19. "Awarding damages for a frivolous appeal is a drastic measure which the court reserves for those cases in which an appeal on its face is totally devoid of merit." *Colgan v. Washington Realty Co.,* 879 S.W.2d 686, 691 (Mo.App.1994). We do not find that the Bank's appeal rises to the requisite level and, therefore, deny Chouteau's request.

### Point III: The Bank did not properly plead the affirmative defense of apparent authority and, therefore, cannot raise it on appeal.

■ "An affirmative defense is defined as one which 'seeks to defeat or avoid plaintiff's cause of action [and] ... avers that even if the petition is true the plaintiff cannot prevail because there are additional facts that permit the defendant to avoid legal responsibility.' " *Holdener v. Fieser,* 971 S.W.2d 946, 950 (Mo.App.1998) (citation omitted). Apparent authority is such a defense. *See Dalton & Marberry,* 982 S.W.2d at 235.

■ To be entitled to summary judgment, Chouteau bears the burden of negating all properly pled affirmative defenses. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. Rule 55.08 requires that all applicable affirmative defenses be pled in the responsive pleadings along with "a short and plain statement of the facts showing that the pleader is entitled to the defense,"

---

**6.** A 2001 amendment to section 400.1–201 moved the definition of "unauthorized signature" from sub-section (43) to sub-section (44) but did not change the text of the provision.

or else it will be considered generally waived. *Holdener,* 971 S.W.2d at 950. The Bank did not plead the affirmative defense of apparent authority in its answer and cross-claim to Chouteau's first amended petition.

Chouteau argues that due to this omission, the Bank's affirmative defense of apparent authority is thereby waived. The Bank argues in response that the issue of Thompson's apparent authority was raised several times in responses to a few of the numerous motions for summary judgment filed by Chouteau throughout the progression of this case and, as a result, the pleadings should be deemed amended. Raising an affirmative defense for the first time in a response to a motion for summary judgment is, however, not sufficient, *See State ex rel. Nixon v. Consumer Automotive Resources, Inc.,* 882 S.W.2d 717, 721 (Mo.App.1994), and Chouteau did object at the summary judgment motion hearing to the affirmative defense as not being properly pled.

Rule 55.03 allows a defendant who fails to raise an affirmative defense in its responsive pleadings to seek leave of the court to amend the pleadings. Such leave is not required, but it "shall be freely given when justice so requires." Rule 55.33. The Bank did not include the affirmative defense of apparent authority in responsive pleadings, and it did not seek leave of the court to amend the pleadings. This court will not, therefore, reach the merits of the affirmative defense of apparent authority.

Point denied.

### Point IV: Ratification under section 400.3–403(a) of the UCC does not provide the Bank with a viable affirmative defense.

The Bank argues in its fourth point on appeal that Chouteau should be equitably estopped from pursuing this action because Chouteau ratified all transactions between Thompson and the Bank that occurred prior to August 20, 1995. This ratification, the Bank argues, is specifically allowed by section 400.3–403(a) of the UCC. The relevant portion of this section provides, "An unauthorized signature may be ratified for all purposes of this Article." § 400.3–403(a).

As previously stated in Point II, it is clear that section 400.3–403(a) does not provide the Bank with a viable defense because there is no question that Thompson's signature was authorized. The stipulated set of facts agreed to by both parties states that Thompson was authorized to sign checks drawn on Chouteau's account. Her signature does not, therefore, form a basis for a defense under section 400.3–403(a).

Point denied.

### Points V and VI: The trial court's award of prejudgment interest from the date the First Amended Petition was filed is affirmed.

A right to prejudgment interest must be based on either a statute or a contract. *A.G. Edwards & Sons, Inc. v. Drew,* 978 S.W.2d 386, 396 (Mo.App.1998) (citations omitted). The award in this case must be based on a statute because there is no contention that a contract between the parties allowed for prejudgment interest. Chouteau bases its claim for interest on section 408.020. The Bank questions only whether there was a sufficient demand under the statute and whether the sum sought was liquidated or readily capable of ascertainment. The Bank does not question whether prejudgment interest

was awardable under section 408.020.[7] The statute provides that creditors can receive interest on all accounts after the accounts become due and a demand for payment is made. *Id.* The term "account" as used in section 408.020 is not limited to its traditional meaning. *Id.* The term is considered equivalent to a "claim" or "demand." *Id.* at 397. According to the statute, a demand for payment must be made to trigger a claimant's entitlement to prejudgment interest. *Id.* If no such demand is made, the filing of a suit is a sufficient substitute. *Id.*

■ The Bank raises two points of error in relation to the trial court's award of prejudgment interest. The first point takes issue with the fact that Chouteau did not allege in the First Amended Petition that a demand for prejudgment interest had been made. Though not clearly stated, the Bank's argument seems to reflect a belief that Chouteau was required to make a demand prior to filing the First Amended Petition and then was required to include in the petition a statement that it had made such a demand. As argued by Chouteau, this point is no longer relevant.

Section 408.020 provides, "Creditors shall be allowed to receive interest at the rate of nine percent per annum ... on accounts after they become due and demand of payment is made[.]" Chouteau argues that the Bank's point must fail because the trial court awarded prejudgment interest from the filing date and not before. Because section 408.020 requires that prejudgment interest be calculated after a demand for payment is made,

whether or not Chouteau made a demand for payment prior to filing the petition only matters if the trial court actually ordered that the prejudgment interest be calculated from a point prior to the filing. The trial court only awarded prejudgment interest from the date of the filing and, therefore, Bank's point is no longer relevant.

■ Secondly, the Bank claims that the trial court erred in awarding prejudgment interest from the date the petition was filed because the petition did not contain a sufficient demand for payment. The Bank argues that the demand must be specific. It is true that a demand must be definite as to amount and time. *A.G. Edwards & Sons, Inc.*, 978 S.W.2d at 397. The result of this requirement is that prejudgment interest will not be awarded when the debtor is unaware of the amount owed. *Transamerica Ins. Co. v. Pa. Nat'l Ins. Cos.*, 908 S.W.2d 173, 177 (Mo.App. 1995) (citation omitted).

We find that the petition in this case was sufficiently definite, even though an exact dollar amount was not included. The petition states, "Wherefore Plaintiff Chouteau prays for judgment against Defendant Bank and in favor of Plaintiff Chouteau for actual damages in the amount of its losses, in excess of one million dollars ($1,000,-000), prejudgment and post-judgment interest, along with its costs herein sustained[.]" The petition also provides that Chouteau's actual damages consist of all moneys drawn on Chouteau's account and deposited into Thompson's personal ac-

---

7. There may be an issue about whether Chouteau's claim sounds in tort, in which case prejudgment interest would generally not be available except under the provisions of section 408.040. In *Dalton & Marberry*, the Supreme Court, although dealing with a common law claim rather than one under the UFL, held that the claim against the Bank sounded in negligence rather than contract and that prejudgment interest was available only under section 408.040. *See* 982 S.W.2d at 237. We are naturally reluctant to serve as an advocate of a party and do not believe that, under the circumstances, the award of prejudgment interest under section 408.020 rises to the level of plain error.

count. The reason that Chouteau was unable to include an exact dollar figure in the petition is that the bank records revealed the exact amount of money embezzled, and they were in the Bank's possession. Chouteau's own records in no way indicated that funds were deposited in Thompson's personal account after the Bank cashed the checks made payable to it. The claim amount was readily ascertainable and definite as of the time the petition was filed, and was, therefore, liquidated. *See A.G. Edwards & Sons, Inc.,* 978 S.W.2d at 397.

We find that Chouteau's First Amended Petition was sufficiently definite as to amount and time to constitute a demand for payment under section 408.020. Accordingly, we affirm the trial court's award of prejudgment interest from the filing date.

### *Point VII: The Bank is not entitled to summary judgment.*

█ In its final point the Bank asks that summary judgment be granted in its favor. Because we herein affirm the trial court's award of summary judgment to Chouteau and because a trial court's ruling denying a motion for summary judgment is generally not appealable, *Murphy v. Jackson Nat'l Life Ins. Co.,* 83 S.W.3d 663, 669 n. 5 (Mo.App.2002), we deny the Bank's request.

### CONCLUSION

Because we find none of the affirmative defenses raised by the Bank to be viable on the facts and law, we affirm the trial court's award of summary judgment to Chouteau. In addition, we affirm the trial court's award of prejudgment interest to Chouteau from the time the petition was filed.

PAUL M. SPINDEN, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.