# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1357

_____

|                                                    |     |                                |
|----------------------------------------------------|-----|--------------------------------|
| Watson Coatings, Inc.,                             | *   |                                |
|                                                    | *   |                                |
| Appellant,                                         | *   |                                |
|                                                    | *   | Appeal from the United States  |
| v.                                                 | *   | District Court for the Eastern |
|                                                    | *   | District of Missouri.          |
| American Express Travel Related                    | *   |                                |
| Services, Inc.,                                    | *   |                                |
|                                                    | *   |                                |
| Appellee.                                          | *   |                                |

_____

Submitted: November 15, 2005
Filed: January 31, 2006

_____

Before SMITH, HEANEY, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Watson Coatings, Inc. ("Watson") filed an action in state court against American Express Travel Related Services, Inc. ("American Express"), asserting claims for money had and received, unjust enrichment, and acceptance of funds paid in breach of fiduciary duty. The case arose out of checks issued on Watson's bank account to American Express by a former employee for personal charges on the employee's husband's personal credit card account. American Express removed the

case to federal court and filed a motion for summary judgment. The district court[1] granted the motion, finding that American Express was not liable to Watson under Missouri's Uniform Fiduciaries Law ("UFL"), that American Express was a holder in due course, and that American Express's status as a holder in due course was a defense to Watson's common law claims. For the reasons discussed below, we affirm.

## I. *Background*

Over a ten-year period, Christine Mayfield worked first as an accountant, then as the company controller, and finally as the company treasurer for Watson. Mayfield's duties during her employment with Watson included bookkeeping and accounting functions, purchasing, payroll, accounts payable, billing, and reconciling the corporate checking account. To carry out her duties, Mayfield received authority to act as a fiduciary of Watson and to write checks on funds in Watson's corporate checking account. Watson placed no restrictions or dollar limitations regarding Mayfield's authority to sign checks. Mayfield was solely responsible for reconciling the company checkbook register with the bank statements. Although Watson received monthly bank statements with cancelled checks, Carol Watson, one of Watson's owners, delivered the unopened bank statements to Mayfield but never reviewed the bank statements or reconciled the checking account during Mayfield's tenure at Watson. Mayfield had unsupervised responsibility for issuing, coding, and accounting for manual checks. Manual checks were typed by Mayfield for "cash on delivery" purchases or when an employee was terminated outside of the regular pay cycle.

Mayfield's husband, an American Express account holder, added Mayfield's name to his account in 1992, the year Mayfield began working for Watson. From August 1997 through October 2001, Mayfield manually wrote approximately 45 to 47 checks on Watson's corporate checking account payable to American Express for

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

her or her husband's personal debt. The total dollar value of these checks was $745,969.39.[2] At the top of each check was printed the caption "Watson Coatings, Inc., P.O. Box 35067, St. Louis, Missouri 63135." Neither Mayfield's name nor her husband's name was printed on any of the checks. Each of the checks was made payable to the order of American Express and for credit to the American Express account of Mayfield's husband. American Express credited the account of Mayfield's husband with each payment drawn on Watson's account, thereby reducing her husband's obligation to American Express and allowing her husband to continue to incur additional charges consistent with American Express's card agreement. Watson never had an account with American Express.

Watson informed American Express of Mayfield's fraud *after* Mayfield's employment with Watson ended. According to Paul Carey, Supervisor of Legal and Custodial Relations at American Express, during the period in which Mayfield drew Watson checks, American Express did not have actual knowledge of her fiduciary status with Watson, meaning it did not know that she was empowered to draw checks on Watson's account and that she was employed by Watson as its controller.

Watson filed a petition in a Missouri circuit court, seeking a judgment against American Express on theories of money had and received and unjust enrichment.

---

[2]These checks were written to cover such charges as $12,242.48 for home improvements, $11,582.89 for electronics, $24,298.01 for automobile expenses, $85,358.02 for travel expenses, $12,445.00 for artwork, and $135,595.40 for jewelry. Mayfield and her husband also charged $48,358.98 to pay for Mayfield's daughter's college tuition, as well as $26,360.63 for their tax liabilities. Mayfield wrote checks to American Express ranging in amounts from $5,087.39 to $10,555.65 in 1998 (with an average monthly amount of $9,204.61). In 1999, the checks ranged from $10,141.57 to $30,006.11 (with an average monthly amount of $15,678.41). In 2000, the checks ranged from $6,431.63 to $37,389.21 (with an average monthly amount of $18,163.82). In 2001, the checks ranged from $18,799.82 to $38,938.87 (with an average monthly amount of $26,079.24).

American Express subsequently removed the case to the United States District Court for the Eastern District of Missouri. Watson then amended its complaint, adding a claim of "acceptance of funds paid in breach of fiduciary duty" pursuant to § 469.270 of the Missouri Revised Statutes. The district court granted American Express's motion for summary judgment. Watson filed a timely notice of appeal.

## II. *Discussion*

Watson raises three arguments on appeal: (1) that genuine issues of material fact exist as to American Express's liability under Missouri's UFL; (2) that American Express cannot qualify as a holder in due course because it is a payee or because it fails to meet the requirement of good faith; and (3) that the UFL and the Uniform Commercial Code ("UCC") do not displace Watson's common law claims of "money had and received" and "unjust enrichment."

## A. *Uniform Fiduciaries Law*

Watson first argues that genuine issues of material fact exist as to American Express's liability under the UFL. We review a district court's grant of summary judgment de novo. *Nunley v. Dept. of Justice*, 425 F.3d 1132, 1135 (8th Cir. 2005).

The UFL "is the Missouri codification of the Uniform Fiduciaries Act,"[3] which alters "the common law with respect to the duties of parties who deal with fiduciaries." *In re Lauer*, 98 F.3d 378, 382–83 (8th Cir. 1996) (citing *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 490 (Mo. 1980) (en banc)). The UFL's purpose is to "reliev[e] banks of their common law duty of inquiring into the propriety of each transaction conducted by a fiduciary" and to prevent "banks and others who typically deal with fiduciaries [from being] held liable for a fiduciary's breach of duty absent either (1) 'actual knowledge' of the breach or (2) knowledge of sufficient facts to constitute 'bad faith.'" *Id.* at 383 (citing *Trenton*, 599 S.W.2d at 491–92).

---

[3]Uniform Fiduciaries Act ("UFA").

The UFL provision applicable to the present case states:

> If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that this action in taking the instrument amounts to bad faith. *If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument.*[4]

Mo. Rev. St. § 469.270 (emphasis added); *see also* Unif. Fiduciaries Act § 5 (1922). Under the first sentence of the statute, Watson asserts that a genuine issue of material fact exists as to whether American Express acted in bad faith in violation of the UFL when it took checks drawn on Watson's corporate checking account as payment for the personal debt of Mayfield and her husband. In response, American Express argues that it did not take the checks knowing facts that would support a bad-faith finding.

Watson also contends that, under the second sentence of the statute, a genuine issue of material fact exists whether American Express had actual knowledge that the checks Mayfield wrote were for Mayfield's personal debt or for her personal benefit. American Express maintains that no evidence exists that it had actual knowledge that

---

[4]The provision of the UFL applicable to this case was renumbered from § 456.270 to § 469.270 by the Missouri legislature on July 9, 2004. H.B. 1551, 92d Gen. Assem., Second Reg. Sess. (Mo. 2004). The court will cite to the renumbered version.

the checks were written by Mayfield, a fiduciary, in payment of her personal debt or for her personal benefit.

### 1. *Bad Faith*

The UFL does not define bad faith; however, it does define "good faith." *Trenton*, 599 S.W.2d at 492. "Good faith" means that the act is "in fact done honestly, whether it be done negligently or not." *Id*. (quoting Mo. Rev. St. § 469.240(2)). "[M]ere negligence is insufficient to amount to 'bad faith.' However, it is not entirely accurate to equate 'bad faith' with 'dishonesty,' if the latter term is taken to denote a high degree of moral guilt, or evil motives." *Id*. The test of bad faith is "whether it is commercially unjustifiable for the person accepting a negotiable instrument to disregard and refuse to learn facts readily available. Where circumstances suggestive of the fiduciary's breach become sufficiently obvious it is 'bad faith' to remain passive." *Id*. (explaining that the term "bad faith" in the UFL is borrowed from the Uniform Negotiable Instruments Act).

To establish bad faith, Watson had to show American Express knew or disregarded knowledge that Mayfield was breaching her fiduciary duty. *In re Broadview Lumber Co.*, 118 F.3d 1246, 1251 (8th Cir. 1997) (applying Missouri law). "[M]ere suspicious circumstances" are insufficient to show bad faith. *Johnson v. Citizens Nat'l Bank of Decatur*, 334 N.E.2d 295, 297, 300 (Ill. App. 1975) (reviewing Illinois's version of the UFA, which is identical to Missouri's UFL). Furthermore, "many legitimate reasons [exist as to] why an agent and principal might engage in odd checking practices." *Id*. at 300; *see also United Catholic Parish Sch. of Beaver Dam Educ. Assoc. v. Card Serv. Center*, 636 N.W.2d 206, 208–211 (Wis. App. 2001) (holding that Card Services Center acted in good faith in taking corporate checks from a fiduciary to pay the fiduciary's credit card bills because the checks had no facial irregularities, could have been for a legitimate reimbursement by the company for purchases the fiduciary made on the company's behalf, and were drafted over a seven-year period by the fiduciary without any complaint from the company). Ultimately,

the burden of employing honest fiduciaries rests on the principal. *Johnson*, 334 N.E.2d at 300.

Not only must the payee act honestly, but the payee must also act in a commercially reasonable manner to have acted in "good faith." American Express processes over a million payments a day by electronic means—the only practical means to accomplish the task. We consider electronic, automated check processing to be commercially reasonable. *DBI Architects P.C. v. Am. Express Travel-Related Serv. Co.*, 388 F.3d 886, 895 (D.C. Cir. 2004); *see also* Mo. Rev. St. § 400.3-103(a)(7) (stating that "reasonable commercial standards" do not require a bank that processes checks by automated means to examine the check if the failure to examine it is not in violation of the bank's prescribed procedures and such procedures do not unreasonably vary from general banking usage). Where a bank or payee electronically processes checks pursuant to its normal procedures and does not employ automated procedures that unreasonably vary from general banking usage, no genuine issue of material fact exists as to whether the payee's automated processing of checks is commercially reasonable. *Id.*

In this case, American Express acted in good faith when it accepted the checks from Mayfield as payment for her husband's credit card bills because it acted honestly and in a commercially reasonable manner. First, like the bank in *Broadview*, American Express acted honestly because it had no knowledge that Mayfield was Watson's fiduciary nor did Watson produce evidence that any of American Express's employees knew that Mayfield was breaching her fiduciary duties to Watson. In addition, like the bank in *Johnson*, American Express had no previous relationship with Watson to alert American Express to Mayfield's breach of her fiduciary duties. Also, American Express had no reason to suspect that it would have a problem collecting payment on the checks because they contained no facial irregularities. Finally, Mayfield drafted the checks over a four-year period without any complaint from Watson to American

Express that Mayfield had no authority to pay for her husband's credit card with corporate checks.

In addition to acting honestly, American Express acted in a commercially reasonable manner by using an automated processing system. Watson does not argue that American Express violated its own procedures when it processed the checks. Also, Watson has not provided any evidence that American Express's automated procedures unreasonably vary from general banking usage.

Therefore, we conclude that no genuine issue of material fact exists as to whether American Express acted in bad faith in violation of the first sentence of § 469.270.

2. *Actual Knowledge*

Several sections of the UFL, including § 469.270, "provide that a person who deals with the fiduciary will be held liable to the principal if he has actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary." *Trenton*, 599 S.W.2d 481 at 491 (internal quotations omitted). "Actual knowledge" means a "present awareness" that a fiduciary is breaching his or her duties. *Id.* "[A] person dealing with a fiduciary would be subject to liability to the principal if he were presently aware that the fiduciary 'is defrauding his principal,' that he is misappropriating trust funds, or that the funds are 'being used for private purposes.'" *Id.* (quoting *Southern Agency Co. v. Hampton Bank of St. Louis*, 452 S.W.2d 100, 105 (Mo. 1970)).

Under the second sentence of § 469.270, a payee becomes liable for a fiduciary's breach if either:

> (1) the check is payable to a personal creditor of the fiduciary and delivered to the creditor to pay the fiduciary's personal debt to the actual knowledge of the creditor, or (2) the check is drawn and delivered in any

transaction *known by the payee* to be for the personal benefit of the fiduciary.

*Chouteau Auto Mart, Inc. v. First Bank of Mo.*, 55 S.W.3d 358, 360 (emphasis in the original). A fiduciary's "mere deposit in a personal account" does not give the payee notice of a fiduciary's breach of duty. *Id.* at 361. "Known by the payee to be for the personal benefit of the fiduciary" does not include "deposit of corporate checks in a fiduciary's personal account." *Id.* Under the UCC, "knows" means "actual knowledge;" therefore, "[b]ecause the UCC and the UFL use identical phrases, both must be interpreted to require actual knowledge by the payee that the transaction is for the personal benefit of the fiduciary." *Id.* Constructive knowledge under the UFA is insufficient to impose liability upon the payee because the UFA limits liability "to relatively uncommon cases in which the person who deals with the fiduciary knows all the relevant facts." *County of Macon v. Edgcomb*, 654 N.E.2d 598, 602 (Ill. App. 1995) (reviewing Illinois's version of the UFA, which is identical to Missouri's UFL).

Here, for American Express to be liable to Watson, it must have been aware at the time of the transactions that Mayfield was breaching her fiduciary duties to Watson. First, the mere fact that American Express credited the payments made by Mayfield to her husband's account does not charge it with actual knowledge that the funds were received for payment of a fiduciary's debt or in a transaction for the fiduciary's benefit. American Express had no actual knowledge that Mayfield was Watson's fiduciary when it processed the checks; thus, it could not have known that Mayfield was using fiduciary funds to pay her personal obligations. Second, the checks were for payment on Mayfield's husband's account, not on her own personal account. Accordingly, we hold that American Express did not violate the second sentence of § 469.270 because it did not have actual knowledge that the checks were in payment of a personal debt of Mayfield or were drawn and delivered in a transaction actually known by American Express to be for Mayfield's personal benefit.

B. *Holder in Due Course*

Watson's second argument is that a genuine issue of material fact exists as to whether American Express, as a payee, qualifies as a holder in due course.[5] Watson further asserts that even if American Express did qualify for holder-in-due-course status, it failed to meet the requirement of good faith. Again, we review the district court's grant of summary judgment de novo. *Nunley*, 425 F.3d at 1135.

"The payee of an instrument can be a holder in due course, but use of the holder-in-due-course doctrine by the payee of an instrument is not the normal situation."[6] Mo. Rev. St. § 400.3-302, cmt. 4; *see also Dalton & Marberry, P.C. v.*

---

[5]A holder of an instrument is a holder in due course if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 400.3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 400.3-305.

Mo. Rev. St. § 400.3-302(a).

[6]The drafters of the UCC acknowledged that "in a small percentage of cases it is appropriate to allow the payee of an instrument to assert rights as a holder in due course." Mo. Rev. St. § 400.3-302, cmt. 4. For example:

Employer, who owed money to X, signed a blank check and delivered it to Secretary with instructions to complete the check by typing in X's name and the amount owed to X. Secretary fraudulently completed the check by typing in the name of Y, a creditor to whom Secretary owed

*NationsBank*, 982 S.W.2d 231, 235 (Mo. 1998) (en banc) (explaining that "the drafters of the U.C.C. did not categorically exclude a payee" from holder-in-due-course status but typically a payee is not a holder in due course). Thus, satisfaction of the requirements of a holder in due course is "all that is necessary for a payee to obtain the special protections of a holder in due course." *Hartford Accident & Indem. Co. v. American Express Co.*, 542 N.E.2d 1090, 1093 (N.Y. 1989) (discussing New York's UCC provision, which is identical to Missouri's statute). A bare assertion by the plaintiff that "only in rare circumstances" should a payee be regarded as a holder in due course is insufficient to establish how the payee failed to meet the requirements of a holder in due course. *Wyckoff v. Commerce Bank of Kansas City*, 561 S.W.2d 399, 402 (Mo. App. 1977). However, the payee bears the burden of establishing that it meets all the requirements of a holder in due course. *United States v. Mark Twain Bank–Kansas City*, 771 F.2d 361, 364 (8th Cir. 1985) (applying Missouri law).

Given the facts in this case, we see no reason that if American Express meets the requirements of a holder in due course, it should not qualify for such status simply because it is also a payee. Watson only challenges American Express's fulfillment of the good faith requirement. "'Good faith' means honesty in fact in the conduct of the

money. Secretary then delivered the check to Y in payment of Secretary's debt. Y obtained payment of the check. . . . Since Secretary was authorized to complete the check, Employer is bound by Secretary's act in making the check payable to Y. The drawee bank properly paid the check. Y received funds of Employer which were used for the personal benefit of Secretary. Employer asserts a claim to these funds against Y. If Y is a holder in due course, Y takes free of the claim. Whether Y is a holder in due course depends upon whether Y had notice of Employer's claim.

*Id*., cmt. 4, case # 4. While the UCC comment example is not identical to our case, both involve the maker of the instrument authorizing an employee, acting as a fiduciary, to issue corporate checks to pay corporate debt and the employee using the corporate checks to pay her personal debt.

transaction concerned." Mo. Rev. St. § 400.3-103(4). Because the UFL uses a definition substantially similar to the UCC's definition, and because we have already held that no material factual dispute exists whether American Express acted in good faith under the UFL, we also hold that no factual issue remains whether American Express was a holder in due course.

## C. *Common Law Claims*

Finally, Watson argues that if American Express qualifies as a holder in due course, such status is not an affirmative defense to common law claims of money had and received and unjust enrichment.

"[B]y enacting the UFL and the UCC, the [Missouri] General Assembly has specifically addressed the liability for banks dealing with fiduciaries;" therefore, courts cannot resolve cases based on the common law and general banking principles without considering the uniform acts. *Chouteau*, 55 S.W.3d at 362.[7] Accordingly, holder-in-due-course status can be an affirmative defense to common law claims. *See* MO. REV. ST. § 400.1-102 (stating that Article 3 of the UCC applies to negotiable instruments); *Penalosa Coop. Exch. v. A.S. Polonyi Co.*, 754 F. Supp. 722 (W.D. Mo. 1991) (noting that the holder-in-due-course doctrine "may be available as a defense" to the plaintiff's common law claims); *Blue Cross Serv., Inc. v. Sauer*, 800 S.W.2d 72, 76–77 (Mo. App. 1990) (concluding that the defendants in an unjust enrichment case failed to sustain their burden of proving they qualified as holders in due course).

---

[7]Subsequently, in *Chouteau Auto Mart, Inc. v. First Bank of Missouri*, 148 S.W.3d 17, 24 (Mo. App 2004), the Missouri Court of Appeals decided it need not determine whether a claim against a bank arose solely from the UFL instead of the common law. The court acknowledged that the Missouri Supreme Court had previously rejected a contention that the case could "be resolved on common law principles without consideration of the UCC and UFL." *Id*. The court then noted that in *Dalton* the Missouri Supreme Court upheld a judgment against a bank where the the fiduciary embezzled funds from her employer based only on common law principles. *Id*.

In the present case, neither the UCC nor the UFL prohibit Watson from alleging common law claims; however, defenses under the UCC are available to American Express to counter Watson's common law claims. Therefore, American Express can rely on its holder-in-due-course status as an affirmative defense to Watson's common law claims of money had and received and unjust enrichment. Because we have already determined that American Express is a holder in due course, we also hold that American Express's status as a holder in due course can be raised against Watson's common law claims.

For the foregoing reasons, we affirm district court's grant of summary judgment to American Express.

_____